



1 | Ekwan E. Rhow - State Bar No. 174604
    eer@birdmarella.com
2 | Karis A. Chi - State Bar No. 225778
    kac@birdmarella.com
3 | BIRD, MARELLA, BOXER, WOLPERT,
      NESSIM, DROOKS & LINCENBERG, P.C.
4 | 1875 Century Park East, 23rd Floor
    Los Angeles, California 90067-2561
5 | Telephone: (310) 201-2100
    Facsimile: (310) 201-2110
6 |
7 | Attorneys for Defendants and
    Counterclaimants Human Biostar, Inc.,
    RNL Bio Co., Ltd., Jin Han Hong and
8 | Jeong Chan Ra

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| 11  BEN HANG LEE, an individual; EUN 12  JOO LEE, an individual; WILLIAM LEE, an individual; JUNG HUI LEE, an individual; BRAD LEE, an individual; 13  HELEN JU LEE, an individual, 14  Plaintiffs, 15  vs. 16  HUMAN BIOSTAR, INC., a California corporation, formerly known as RNL 17  Life Science, Inc.; RNL BIO CO., LTD, a Korean corporation; JIN HAN HONG, 18  an individual; JEONG CHAN RA, an individual; and DOES 1 through 20, 19  inclusive, 20  Defendants. 21  HUMAN BIOSTAR, INC., a Texas Corporation; RNL BIO CO., LTD., 22  a Korean Corporation; JIN HAN HONG, an individual, and JEONG CHAN RA, an 23  individual, 24  Counterclaimants, 25  vs. 26  BEN HANG LEE, an individual; EUN ZOO LEE, an individual; WILLIAM LEE, an individual; JUNG HUI LEE, an 27  individual; BRAD LEE, an individual; HELEN JU LEE, an individual, 28  Counterdefendants. | CASE NO. CV12-05668-MWF (MRWx)  **ANSWER AND COUNTERCLAIMS OF DEFENDANTS AND COUNTERCLAIMANTS HUMAN BIOSTAR, INC., RNL BIO CO., LTD., JIN HAN HONG AND JEONG CHAN RA**  **DEMAND FOR JURY TRIAL** |

2901260.1

**ANSWER**

Pursuant to Fed. R. Civ. P. 8, defendants Human Biostar, Inc., RNL Bio Co., Ltd., Jin Han Hong and Jeong Chan Ra (collectively, "Defendants") hereby answer the First Amended Complaint, for themselves and no other, as follows:

1. Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in paragraph 1, and on that basis deny them.

2. Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in paragraph 2, and on that basis deny them.

3. Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in paragraph 3, and on that basis deny them.

4. Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in paragraph 4, and on that basis deny them.

5. Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in paragraph 5, and on that basis deny them.

6. Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in paragraph 6, and on that basis deny them.

7. Defendants admit that Human Biostar, Inc. is a Texas Corporation, was formerly known as RNL Life Science, Inc., and maintained a place of business during the times mentioned in the First Amended Complaint at 3250 W. Olympic Boulevard, Suite 225, in Los Angeles, California.

8. Defendants admit that RNL Bio Co., Ltd. is a publicly-traded Korean Corporation with its place of business in South Korea. Defendants deny the remaining allegations in paragraph 8.

9. Defendants admit that Jin Han Hong is an individual and a shareholder, officer and director of Human Biostar, Inc. Defendants deny the remaining allegations paragraph 9.

10. Defendants admit that Jeong Chan Ra is an individual residing in Korea; is a veterinarian; is a majority shareholder, director and founder of RNL Bio

1  Co., Ltd.; was the CEO of RNL Bio Co., Ltd. prior to May 2011; and is a director

2  and officer of Human Biostar, Inc.  Defendants deny the remaining allegations

3  paragraph 10.

4       11.    The allegations in paragraph 11 assert propositions of law as to which

5  no admission or denial is required.  To the extent a response is deemed necessary,

6  because Defendants deny any fraud, negligence or omission occurred in Los

7  Angeles County or at all, Defendants deny the allegations in paragraph 11.

8       12.    The allegations in paragraph 12 assert propositions of law as to which

9  no admission or denial is required.  To the extent a response is deemed necessary,

10  because Defendants deny any fraud, negligence or omission occurred in Los

11  Angeles County or at all, Defendants deny the allegations in paragraph 12.

12       13.    The allegations in paragraph 13 assert propositions of law as to which

13  no admission or denial is required.  To the extent a response is deemed necessary,

14  Defendants deny the allegations in paragraph 13.

15       14.    The allegations in paragraph 14 assert propositions of law as to which

16  no admission or denial is required.  To the extent a response is deemed necessary,

17  Defendants deny the allegations in paragraph 14.

18       15.    Defendants deny the allegations in paragraph 15.

19       16.    The allegations in paragraph 16 assert propositions of law as to which

20  no admission or denial is required.  To the extent a response is deemed necessary,

21  Defendants deny the allegations in paragraph 16.

22       17.    The allegations in paragraph 17 assert propositions of law as to which

23  no admission or denial is required.  To the extent a response is deemed necessary,

24  Defendants deny the allegations in paragraph 17.

25       18.    The allegations in paragraph 18 assert propositions of law as to which

26  no admission or denial is required.  To the extent a response is deemed necessary,

27  Defendants deny the allegations in paragraph 18.

28       19.    Defendants deny the allegations in paragraph 19.

1    20.    Defendants deny the allegations in paragraph 20.

2    21.    Defendants deny the allegations in paragraph 21 on the basis that the

3    term "stem cell therapy" is vague and ambiguous, and to the extent the allegations

4    imply that Defendants were involved in all aspects of the alleged "stem cell

5    therapy." Defendants lack sufficient information to form a belief as to the truth or

6    falsity of the remaining allegations in paragraph 21, and on that basis deny them.

7    22.    Defendants deny the allegations in paragraph 22.

8    23.    Defendants deny the allegations in paragraph 23.

9    24.    Defendants lack sufficient information to form a belief as to the truth or

10   falsity of the allegations in paragraph 24, and on that basis deny them.

11   25.    Defendants lack sufficient information to form a belief as to the truth or

12   falsity of the allegations in paragraph 25, and on that basis deny them.

13   26.    Defendants lack sufficient information to form a belief as to the truth or

14   falsity of the allegations in paragraph 26, and on that basis deny them.

15   27.    Defendants lack sufficient information to form a belief as to the truth or

16   falsity of the allegations in paragraph 27, and on that basis deny them.

17   28.    Defendants admit Jin Han Hong and Jeong Chan Ra attended and spoke

18   during certain seminars hosted by Human Biostar, Inc. in 2009 and 2010.

19   Defendants lack sufficient information to form a belief as to the truth or falsity of

20   the remaining allegations in paragraph 28, and on that basis deny them.

21   29.    Defendants admit Jin Han Hong and Jeong Chan Ra attended and spoke

22   during certain seminars hosted by Human Biostar, Inc. in 2009 and 2010.

23   Defendants lack sufficient information to form a belief as to the truth or falsity of

24   the remaining allegations in paragraph 29, and on that basis deny them.

25   30.    Defendants deny the allegations in paragraph 30 and all subparagraphs

26   therein.

27   31.    Defendants lack sufficient information to form a belief as to the truth or

28   falsity of the allegations in paragraph 31, and on that basis deny them.

1       32.    Defendants admit Jin Han Hong was introduced to Brad Lee and Helen

2   Ju Lee by an individual who purportedly was a church member of Brad Lee.

3   Defendants lack sufficient information to form a belief as to the truth or falsity of

4   the allegations concerning the ailments of Brad Lee and Helen Lee, and on that basis

5   deny them.  Defendants deny the remaining allegations in paragraph 32.

6       33.    Defendants admit Jin Han Hong met Ben Hang Lee and Eun Zoo Lee

7   (whose name is misspelled in the First Amended Complaint as "Eun Joo Lee") in or

8   about October 2009.  Defendants lack sufficient information to form a belief as to

9   the truth or falsity of the allegations concerning the ailments of Ben Hang Lee and

10  Eun Zoo Lee, and on that basis deny them.  Defendants deny the remaining

11  allegations in paragraph 33.

12      34.    Defendants admit Jin Han Hong met William Lee and Jung Hui Lee in

13  or about October 2009.  Defendants lack sufficient information to form a belief as to

14  the truth or falsity of the allegations concerning the ailments of William Lee and

15  Jung Hui Lee, and on that basis deny them.  Defendants deny the remaining

16  allegations in paragraph 34.

17      35.    Defendants deny the allegations in paragraph 35.

18      36.    Defendants lack sufficient information to form a belief as to the truth or

19  falsity of the allegations in paragraph 36, and on that basis deny them.

20      37.    Defendants lack sufficient information to form a belief as to the truth or

21  falsity of the allegations in paragraph 37, and on that basis deny them.

22      38.    Defendants lack sufficient information to form a belief as to the truth or

23  falsity of the allegations in paragraph 38, and on that basis deny them.

24      39.    Defendants admit certain types of stem cell treatments are still in the

25  clinical and trial stage.  Defendants lack sufficient information to form a belief as to

26  the truth or falsity of the remaining allegations in paragraph 39, and on that basis

27  deny them.

28      40.    Defendants deny the allegations in paragraph 40.

41.     Defendants admit that in 2009 and 2010, plaintiffs had body fat extracted at a certain clinic in Los Angeles.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations in paragraph 41, and on that basis deny them.

42.     Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations in paragraph 42, and on that basis deny them.

43.     Defendants admit that Ben Hang Lee paid $15,000.  Defendants deny the allegations in paragraph 43 to the extent they imply the payment was for intravenous infusions. Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations in paragraph 43 and on that basis deny them.

44.     Defendants admit that Eun Zoo Lee paid $15,000.  Defendants deny the allegations in paragraph 44 to the extent they imply the payment was for intravenous infusions.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations in paragraph 44 and on that basis deny them.

45.     Defendants admit that William Lee paid $7,500.  Defendants deny the allegations in paragraph 45 to the extent they imply the payment was for intravenous infusions.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations in paragraph 45 and on that basis deny them.

46.     Defendants admit that Jung Hui Lee paid $15,000.  Defendants deny the allegations in paragraph 46 to the extent they imply the payment was for intravenous infusions.  Defendants admit that in or around November 2010, Jung Hui Lee and Human Biostar, Inc. executed a valid and binding Settlement Agreement and Release.  Defendants deny that the Settlement Agreement and Release was improperly obtained or is unenforceable or voidable in any way.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations in paragraph 46 and on that basis deny them.

47.     Defendants admit that Brad Lee paid $15,000.  Defendants deny the

allegations in paragraph 47 to the extent they imply the payment was for intravenous infusions. Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations in paragraph 47 and on that basis deny them.

48.     Defendants admit that Helen Ju Lee paid $7,500. Defendants deny the allegations in paragraph 48 to the extent they imply the payment was for intravenous infusions. Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations in paragraph 48 and on that basis deny them.

49.     Defendants deny the allegations in paragraph 49.

50.     Defendants deny the allegations in paragraph 50.

51.     Defendants deny the allegations in paragraph 51.

52.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in paragraph 52 and on that basis deny them.

53.     Defendants deny the allegations in paragraph 53.

54.     Defendants deny the allegations in paragraph 54.

55.     Defendants deny the allegations in paragraph 55.

56.     Defendants deny the allegations in paragraph 56.

57.     Defendants incorporate by reference their responses to paragraphs 1 through 56, inclusive, as though fully set forth herein.

58.     Defendants deny the allegations in paragraph 58.

59.     Defendants deny the allegations in paragraph 59.

60.     The allegations contained in paragraph 60 assert propositions of law as to which no admission or denial is required. To the extent a response is deemed necessary, Defendants deny the allegations of paragraph 60.

61.     The allegations contained in paragraph 61 assert propositions of law as to which no admission or denial is required. To the extent a response is deemed necessary, Defendants deny the allegations of paragraph 61.

62.     The allegations contained in paragraph 62 assert propositions of law as to which no admission or denial is required. To the extent a response is deemed

1 | necessary, Defendants deny the allegations of paragraph 62.

2 |       63.    Defendants incorporate by reference their responses to paragraphs 1

3 | through 62, inclusive, as though fully set forth herein.

4 |       64.    The allegations contained in paragraph 64 assert propositions of law as

5 | to which no admission or denial is required.  To the extent a response is deemed

6 | necessary, Defendants deny the allegations of paragraph 64.

7 |       65.    The allegations contained in paragraph 65 assert propositions of law as

8 | to which no admission or denial is required.  To the extent a response is deemed

9 | necessary, Defendants deny the allegations of paragraph 65.

10 |       66.    The allegations contained in paragraph 66 assert propositions of law as

11 | to which no admission or denial is required.  To the extent a response is deemed

12 | necessary, Defendants deny the allegations of paragraph 66.

13 |       67.    The allegations contained in paragraph 67 assert propositions of law as

14 | to which no admission or denial is required.  To the extent a response is deemed

15 | necessary, Defendants deny the allegations of paragraph 67.

16 |       68.    The allegations contained in paragraph 68 assert propositions of law as

17 | to which no admission or denial is required.  To the extent a response is deemed

18 | necessary, Defendants deny the allegations of paragraph 68.

19 |       69.    Defendants incorporate by reference their responses to paragraphs 1

20 | through 68, inclusive, as though fully set forth herein.

21 |       70.    Defendants deny the allegations in paragraph 70.

22 |       71.    The allegations contained in paragraph 71 assert propositions of law as

23 | to which no admission or denial is required.  To the extent a response is deemed

24 | necessary, Defendants deny the allegations of paragraph 71.

25 |       72.    The allegations contained in paragraph 72 assert propositions of law as

26 | to which no admission or denial is required.  To the extent a response is deemed

27 | necessary, Defendants deny the allegations of paragraph 72.

28 |       73.    The allegations contained in paragraph 73 assert propositions of law as

1  to which no admission or denial is required.  To the extent a response is deemed
2  necessary, Defendants deny the allegations of paragraph 73.

3      74.    The allegations contained in paragraph 74 assert propositions of law as
4  to which no admission or denial is required.  To the extent a response is deemed
5  necessary, Defendants admit that California Health and Safety Code section
6  1110403 provides in part that, "except as otherwise provided in Section 110405, it is
7  unlawful for any person to advertise any drug or device represented to have any
8  effect in" various conditions, disorders, or diseases, including blood disorders, bone
9  or joint diseases, cancer, diabetes and high blood pressure.  Defendants deny section
10  110390 *et seq.* provide for any private right of action thereunder. Defendants lack
11  sufficient information to form a belief as to the truth or falsity of the remaining
12  allegations in paragraph 74, and on that basis deny them.

13      75.    The allegations contained in paragraph 75 assert propositions of law as
14  to which no admission or denial is required.  To the extent a response is deemed
15  necessary, Defendants lack sufficient information to form a belief as to the truth or
16  falsity of the allegations in paragraph 75, and on that basis deny them.

17      76.    The allegations contained in paragraph 76 assert propositions of law as
18  to which no admission or denial is required.  To the extent a response is deemed
19  necessary, Defendants deny the allegations of paragraph 76.

20      77.    The allegations contained in paragraph 77 assert propositions of law as
21  to which no admission or denial is required.  To the extent a response is deemed
22  necessary, Defendants deny the allegations of paragraph 77.

23      78.    The allegations contained in paragraph 78 assert propositions of law as
24  to which no admission or denial is required.  To the extent a response is deemed
25  necessary, Defendants deny the allegations of paragraph 78.

26      79.    Defendants incorporate by reference their responses to paragraphs 1
27  through 78, inclusive, as though fully set forth herein.

28      80.    The allegations contained in paragraph 80 assert propositions of law as

1   to which no admission or denial is required. To the extent a response is necessary,

2   Defendants deny the allegations of paragraph 80 and all sub-paragraphs therein.

3      81.    The allegations contained in paragraph 81 assert propositions of law as

4   to which no admission or denial is required.  To the extent a response is deemed

5   necessary, Defendants deny the allegations of paragraph 81.

6      82.    The allegations contained in paragraph 82 assert propositions of law as

7   to which no admission or denial is required.  To the extent a response is deemed

8   necessary, Defendants deny the allegations of paragraph 82.

9      83.    The allegations contained in paragraph 83 assert propositions of law as

10  to which no admission or denial is required.  To the extent a response is deemed

11  necessary, Defendants deny the allegations of paragraph 83.

12     84.    Defendants incorporate by reference their responses to paragraphs 1

13  through 83, inclusive, as though fully set forth herein.

14     85.    Defendants admit defendant Human Biostar, Inc. received money from

15  Plaintiffs.  Defendants deny the remaining allegations in paragraph 85.

16     86.    Defendants lack sufficient information to form a belief as to the truth or

17  falsity of the allegations in paragraph 86, and on that basis deny them.

18     87.    Defendants deny the allegations of paragraph 87.

19     88.    The allegations contained in paragraph 88 assert propositions of law as

20  to which no admission or denial is required.  To the extent a response is deemed

21  necessary, Defendants deny the allegations of paragraph 88.

22     89.    The allegations contained in paragraph 89 assert propositions of law as

23  to which no admission or denial is required.  To the extent a response is deemed

24  necessary, Defendants deny the allegations in paragraph 89.

25     90.    The allegations contained in paragraph 90 assert propositions of law as

26  to which no admission or denial is required.  To the extent a response is deemed

27  necessary, Defendants deny the allegations of paragraph 90.

28     91.    The allegations contained in paragraph 91 assert propositions of law as

1    to which no admission or denial is required.  To the extent a response is deemed

2    necessary, Defendants deny the allegations of paragraph 91.

3         92.    Defendants incorporate by reference their responses to paragraphs 1

4    through 91, inclusive, as though fully set forth herein.

5         93.    The allegations contained in paragraph 93 assert propositions of law as

6    to which no admission or denial is required.  To the extent a response is deemed

7    necessary, Defendants deny the allegations of paragraph 93.

8         94.    Defendants deny the allegations of paragraph 94.

9         95.    The allegations contained in paragraph 95 assert propositions of law as

10   to which no admission or denial is required.  To the extent a response is deemed

11   necessary, Defendants deny the allegations of paragraph 95.

12        96.    The allegations contained in paragraph 96 assert propositions of law as

13   to which no admission or denial is required.  To the extent a response is deemed

14   necessary, Defendants deny the allegations of paragraph 96.

15        97.    Defendants incorporate by reference their responses to paragraphs 1

16   through 96, inclusive, as though fully set forth herein.

17        98.    Defendants deny the allegations of paragraph 98.

18        99.    The allegations contained in paragraph 99 assert propositions of law as

19   to which no admission or denial is required.  To the extent a response is deemed

20   necessary, Defendants deny the allegations of paragraph 99.

21        100.   The allegations contained in paragraph 100 assert propositions of law

22   as to which no admission or denial is required.  To the extent a response is deemed

23   necessary, Defendants deny the allegations of paragraph 100.

24        101.   The allegations contained in paragraph 101 assert propositions of law

25   as to which no admission or denial is required.  To the extent a response is deemed

26   necessary, Defendants deny the allegations of paragraph 101.

27        102.   Defendants deny that Plaintiffs are entitled to any of the relief

28   requested on pages 22-24 of the First Amended Complaint.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof of any defense that would otherwise rest on Plaintiffs, and reserving the right to assert additional defenses, Defendants assert the following affirmative defenses as to the claims asserted in the First Amended Complaint:

### FIRST AFFIRMATIVE DEFENSE
#### (Failure to State a Claim)

103. The Complaint, and each purported cause of action alleged therein, fails to allege facts sufficient to state a cause of action against Defendants upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
#### (Forum-Selection Clause/Lack Of Jurisdiction)

104. All of Plaintiffs' claims fall within the scope of a valid and enforceable forum selection clause in agreements executed by Plaintiffs, which clause confers exclusive jurisdiction over Plaintiffs' claims upon the Central District Court of Seoul in South Korea. This Court therefore lacks jurisdiction over this dispute.

### THIRD AFFIRMATIVE DEFENSE
#### (Waiver/Estoppel)

105. Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

### FOURTH AFFIRMATIVE DEFENSE
#### (Release)

106. Plaintiffs are barred from any recovery sought herein by the valid and enforceable written contractual releases they executed.

### FIFTH AFFIRMATIVE DEFENSE
#### (Assumption of Risk)

107. Plaintiffs are barred from any recovery sought herein because they voluntarily and knowingly entered into and engaged in the activities alleged in the

1  Complaint, and voluntarily and knowingly assumed all risks incidental to said
2  activities.

### SIXTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

108.   The Complaint, and each cause of action thereof, is barred in that the
action was not filed and/or served within the time prescribed by the contractual
limitations periods set forth in applicable agreements between the parties, and/ or by
the applicable statutes of limitations or repose, including but not limited to Ca. Code
Civ. Proc. §§ 335.1, 338, 340 and Ca. Bus. & Prof. Code § 17208.

### SEVENTH AFFIRMATIVE DEFENSE
### (Laches)

109.   Plaintiffs' claims are barred, in whole or in part, by the doctrines of
laches.

### EIGHTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

110.   Plaintiffs come into this Court with unclean hands, and under the
circumstances of this case, such doctrine bars or limits any recovery against
Defendants.

### NINTH AFFIRMATIVE DEFENSE
### (Lack of Causation)

111.   Plaintiffs are barred, in whole or in part, from recovering from
Defendants on any claims because there is no causal relationship between any
damages and any act of Defendants.

### TENTH AFFIRMATIVE DEFENSE
### (Damages Caused by Others)

112.   Any injury or damage allegedly suffered by Plaintiffs was proximately
caused, in whole or in part, by the conduct of parties other than Defendants, whom
Defendants neither controlled nor had the right to control.  Accordingly, the amount

1    of recovery to which Plaintiffs are entitled, if any, must be diminished or barred by

2    reason thereof.

3                    **ELEVENTH AFFIRMATIVE DEFENSE**

4                    **(Damages Speculative/Uncertain)**

5           113.   The Complaint's prayer for damages is barred because Plaintiffs'

6    damages, if any, are speculative, uncertain, and incapable of being ascertained.

7                     **TWELFTH AFFIRMATIVE DEFENSE**

8                          **(Failure to Mitigate)**

9           114.   Plaintiffs are barred and precluded from recovery to the extent that they

10   have failed to mitigate or reasonably attempt to mitigate their damages, if any, as

11   required by law.

12                  **THIRTEENTH AFFIRMATIVE DEFENSE**

13                       **(Adequate Remedy at Law)**

14          115.   Plaintiffs' equitable claims are barred in part or whole on the ground

15   that they have adequate remedies at law.

16                 **FOURTEENTH AFFIRMATIVE DEFENSE**

17                        **(Election of Remedies)**

18          116.   Plaintiffs' claims are barred, in part or whole, under the doctrine of

19   election of remedies, in that Plaintiffs have pled inconsistent remedies.

20                   **FIFTEENTH AFFIRMATIVE DEFENSE**

21                          **(Indemnification)**

22          117.   Defendants are entitled to receive contribution and/or indemnification

23   from others, including certain Plaintiffs, for any liability Defendants incur.

24                   **SIXTEENTH AFFIRMATIVE DEFENSE**

25                 **(Contributory/Comparative Negligence)**

26          118.   Any injury or damage allegedly suffered by Plaintiffs were proximately

27   caused, in whole or in part, by their own conduct.  Accordingly, the amount of

28   recovery to which Plaintiffs are entitled, if any, must be diminished or barred by

2901260.1

1 | reason thereof.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (No Entitlement to Punitive Damages)

119.   Plaintiffs' claims for punitive damages are barred by law, by the due process clauses of the Fifth and Fourteenth Amendment to the United States Constitution, and/or by other constitutional and statutory provisions.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Reservation of Additional Defenses)

120.   Defendants do not presently know all of the facts and circumstances related to Plaintiffs' claims, and as such, do not have sufficient knowledge or information upon which to form a belief as to whether any additional, as yet unstated, affirmative defenses are available.  Defendants therefore reserve the right to assert additional affirmative defenses and to amend this answer as necessary.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray for judgment as follows:

A.   That all of Plaintiffs' claims be dismissed with prejudice; and

B.   For such other and further relief that this Court may deem just and proper.

DATED:  September 27, 2012

Ekwan E. Rhow
Karis A. Chi
BIRD, MARELLA, BOXER, WOLPERT,
    NESSIM, DROOKS & LINCENBERG, P.C.


By:    _____/s/ *Karis A. Chi*_____
             Karis A. Chi
Attorneys for Defendants and
Counterclaimants Human Biostar, Inc.,
RNL Bio Co., Ltd., Jin Han Hong and
Jeong Chan Ra

## COUNTERCLAIMS

Counterclaimants Human Biostar, Inc., RNL Bio Co., Ltd., Jin Han Hong and Jeong Chan Ra (collectively, "Counterclaimants") allege counterclaims against counterdefendants Ben Hang Lee, Eun Zoo Lee (name misspelled in the First Complaint as "Eun Joo Lee"), William Lee, Jung Hui Lee, Brad Lee and Helen Ju Lee (collectively, "Counterdefendants") as follows:

## FIRST COUNTERCLAIM

### (Breach of Contract – Written Release – Against Brad Lee, Ben Hang Lee, Eun Zoo Lee, Jung Hui Lee, Helen Ju Lee and William Lee)

121.   Counterdefendants Brad Lee, Ben Hang Lee, Eun Zoo Lee, Jung Hui Lee, Helen Ju Lee and William Lee each executed written Waiver and Release of Liability and Assumption of Risk Acknowledgement Agreements whereby they each acknowledged and assumed the risks associated with the autologous adipose tissue derived stem cell therapy at issue in this action, and agreed to waive and release RNL Bio Co., Ltd. and "its officers, employees, agents, successors, and assigns" – including all Defendants named in the First Amended Complaint – from any and all liability arising out of any services provided in connection therewith.

122.   Counterclaimants are all either direct or intended third-party beneficiaries of the Waiver and Release of Liability and Assumption of Risk Acknowledgement Agreements, and have standing to enforce the Agreements.

123.   A true and correct copy of the Waiver and Release of Liability and Assumption of Risk Acknowledgement Agreement signed by counterdefendant Brad Lee on or about May 27, 2009 is attached hereto as Exhibit A.

124.   A true and correct copy of the Waiver and Release of Liability and Assumption of Risk Acknowledgement Agreement signed by counterdefendant Helen Ju Lee on or about May 27, 2009 is attached hereto as Exhibit B.

125.   A true and correct copy of the Waiver and Release of Liability and Assumption of Risk Acknowledgement Agreement signed by counterdefendant

1   William Lee is attached hereto as Exhibit C.

2       126.   A true and correct copy of the Waiver and Release of Liability and
3   Assumption of Risk Acknowledgement Agreement signed by counterdefendant Jung
4   Hui Lee on or about October 5, 2009 is attached hereto as Exhibit D.

5       127.   A true and correct copy of the Waiver and Release of Liability and
6   Assumption of Risk Acknowledgement Agreement signed by counterdefendant Eun
7   Zoo Lee on or about October 27, 2009 is attached hereto as Exhibit E.

8       128.   A true and correct copy of the Waiver and Release of Liability and
9   Assumption of Risk Acknowledgement Agreement signed by counterdefendant Ben
10  Hang Lee on or about October 27, 2009 is attached hereto as Exhibit F.

11      129.   Human Biostar, Inc. and RNL Bio Co., Ltd. provided certain services
12  in reliance on Counterdefendants' agreement to the terms of the Waiver and Release
13  of Liability and Assumption of Risk Acknowledgement Agreements, and would not
14  have done so had they known that Counterdefendants did not intend to honor the
15  terms therein.

16      130.   Counterdefendants have materially breached the Waiver and Release of
17  Liability and Assumption of Risk Acknowledgement Agreements and the covenant
18  of good faith and fair dealing therein by demanding payment from Counterclaimants
19  and by initiating a lawsuit against Counterclaimants for the very claims they had
20  expressly released, and for alleged injuries resulting from activities for which they
21  had expressly assumed responsibility.

22      131.   RNL Bio Co., Ltd. has fully performed all of the obligations,
23  conditions, covenants, and promises required by the Waiver and Release of Liability
24  and Assumption of Risk Acknowledgement Agreements except those waived,
25  excused, or prevented by Counterdefendants.  Counterdefendants' performance has
26  not been excused.

27      132.   As a direct and proximate result of Counterdefendants' breach of the
28  Waiver and Release of Liability and Assumption of Risk Acknowledgement

1   Agreements, Counterclaimants have suffered substantial damages, in an amount to
2   be determined according to proof at trial.

3                           **SECOND COUNTERCLAIM**
4          **(Breach of Contract – Settlement Agreement – Against Jung Hui Lee)**
5          133.   In or about November 2010, counterdefendant Jung Hui Lee and
6   Human Biostar, Inc. entered into a written Settlement Agreement and Release
7   concerning services provided by Human Biostar, Inc. in connection with the therapy
8   at issue in this action.
9          134.   Pursuant to the terms of the Settlement Agreement and Release and in
10  exchange for valuable consideration, Jung Hui Lee generally released her claims
11  against Human Biostar, Inc. and affiliated entities and persons, including all of the
12  Counterclaimants.
13         135.   Counterclaimants are all either direct or intended third-party
14  beneficiaries of the Settlement Agreement and Release, and have standing to enforce
15  it.
16         136.   The Settlement Agreement and Release provides for the recovery of
17  reasonable attorney's fees and costs to the prevailing party in proceedings to enforce
18  its terms.
19         137.   Jung Hui Lee has materially breached the Settlement Agreement and
20  Release by demanding additional payment from Counterclaimants, by initiating a
21  lawsuit against Counterclaimants for the same claims she had already released, and
22  by seeking relief that directly contravene the express terms of the Settlement
23  Agreement and Release.
24         138.   Human Biostar, Inc. has fully performed all of the obligations,
25  conditions, covenants, and promises required by the Settlement Agreement and
26  Release except those waived, excused, or prevented by Jung Hui Lee.  Jung Hui
27  Lee's performance has not been excused.
28         139.   As a direct and proximate result of Jung Hui Lee's breach of the

1   Settlement Agreement and Release, Counterclaimants have suffered and will

2   continue to suffer substantial damages in an amount to be ascertained at trial.

3       140.   In the event Counterclaimants prevail, they are entitled to recover their

4   reasonable attorneys' fees and costs.

5                          **THIRD COUNTERCLAIM**

6       **(Equitable Indemnity Based on Misrepresentation – Against Brad Lee)**

7       141.   Upon information and belief, beginning in or about April 2009, Brad

8   Lee made inaccurate and misleading statements that mischaracterized and/or

9   overstated the benefits of the autologous adipose tissue derived stem cell therapy at

10  issue in this action, and the limited services provided by Human Biostar, Inc. and

11  RNL Bio Co., Ltd. in connection therewith.  Brad Lee made such statements based

12  solely on his experience and conjecture, and without the knowledge or consent of

13  Counterclaimants.  Brad Lee's representations, including statements that the therapy

14  will, in fact, cure all ailments including diabetes, arthritis, high blood pressure, back

15  pain, and insomnia, caused the remaining Counterdefendants to undergo the therapy

16  and expect the results promised by Brad Lee.

17      142.   At the time Brad Lee made such representations, he had been advised

18  by Counterclaimants of the accurate facts concerning the therapy, including the

19  attendant risks and uncertainty of results, and concerning Counterclaimants' limited

20  role in connection therewith.  Counterclaimants are informed and believe, and on

21  that basis allege, that at the time Brad Lee made such representations, he knew that

22  he was mischaracterizing and overstating the nature and character of the therapy and

23  that he did not have Counterclaimants' authorization to make any such statements

24  on their behalf.  Brad Lee made such false representations to induce

25  Counterdefendants Ben Hang Lee, Eun Zoo Lee, William Lee, Jung Hui Lee, and

26  Helen Ju Lee to undergo the therapy, and did induce them to do so.

27      143.   Counterclaimants were not aware that Brad Lee had made such

28  statements, did not authorize Brad Lee to make any statements on their behalf, and

1   did not at any time ratify such statements by Brad Lee.

2   144.   As a direct and proximate result of Brad Lee's inaccurate and

3   unauthorized representations, Counterdefendants Ben Hang Lee, Eun Zoo Lee,

4   William Lee, Jung Hui Lee, Helen Ju Lee expected results promised by Brad Lee,

5   and now seek payment from Counterclaimants for failing to deliver the results

6   promised by Brad Lee.  To the extent Counterdefendants Ben Hang Lee, Eun Zoo

7   Lee, William Lee, Jung Hui Lee, Helen Ju Lee sustained any damages, such

8   damages are primarily and actively caused by Brad Lee.

9   145.   Counterdefendant Brad Lee's inaccurate and unauthorized

10   representations have also caused Counterclaimants to suffer significant injuries to

11   their reputation, loss of business and profits, and damages, including legal fees and

12   costs.  As such, equity requires that Brad Lee fully indemnify Counterclaimants for

13   any losses they have sustained, including any potential judgment against

14   Counterclaimants that may be awarded in favor of Counterdefendants.

15   **FOURTH COUNTERCLAIM**

16   **(Comparative Equitable Indemnity – Against Brad Lee)**

17   146.   Counterclaimants repeat and reallege paragraphs 141 through 143

18   above and incorporates the same by reference as if set forth fully herein.

19   147.   As a direct and proximate result of Brad Lee's inaccurate and

20   unauthorized representations as described in paragraphs 141 through 143 above,

21   Counterdefendants Ben Hang Lee, Eun Zoo Lee, William Lee, Jung Hui Lee, Helen

22   Ju Lee expected results promised by Brad Lee, and now seek payment from

23   Counterclaimants for failing to deliver the results promised by Brad Lee.  To the

24   extent Counterdefendants Ben Hang Lee, Eun Zoo Lee, William Lee, Jung Hui Lee,

25   Helen Ju Lee sustained any damages, they are partially caused by Brad Lee.

26   148.   Counterdefendant Brad Lee's inaccurate and unauthorized

27   representations have also caused Counterclaimants to suffer significant injuries to its

28   reputation, loss of business and profits, and damages, including legal fees and costs.

1 | As such, equity requires that Brad Lee partially indemnify Counterclaimants for any
2 | losses they have sustained, including any potential judgment against
3 | Counterclaimants that may be awarded in favor of Counterdefendants, in proportion
4 | to Brad Lee's responsibility for such losses.

5 | **PRAYER FOR RELIEF**

6 | WHEREFORE, Counterclaimants pray for judgment against
7 | Counterdefendants as follows:

8 | A.    For compensatory damages according to proof at trial;

9 | B.    For indemnification for any loss Counterclaimants sustained as a result
10 | of Counterdefendants' wrongful conduct and breach of contract, including, but not
11 | limited to all costs, attorneys' fees, and/or judgments which might be rendered
12 | against Counterclaimants;

13 | C.    For interest as provided by law;

14 | D.    For attorneys' fees and costs of suit; and

15 | E.    For such other and further relief as the Court deems just and proper.

17 | DATED:  September 27, 2012        Ekwan E. Rhow
18 |                                  Karis A. Chi
     |                                  BIRD, MARELLA, BOXER, WOLPERT,
19 |                                      NESSIM, DROOKS & LINCENBERG, P.C.

22 |                                  By:   _____/s/ *Karis A. Chi*_____
     |                                             Karis A. Chi
23 |                                  Attorneys for Defendants and
     |                                  Counterclaimants Human Biostar, Inc.,
24 |                                  RNL Bio Co., Ltd., Jin Han Hong and
25 |                                  Jeong Chan Ra

## **DEMAND FOR JURY TRIAL**

Human Biostar, Inc., RNL Bio Co., Ltd., Jin Han Hong and Jeong Chan Ra hereby demand trial by jury on all issues so triable.

DATED:  September 27, 2012          Ekwan E. Rhow
                                    Karis A. Chi
                                    BIRD, MARELLA, BOXER, WOLPERT,
                                        NESSIM, DROOKS & LINCENBERG, P.C.


                                    By:  _____/s/ *Karis A. Chi*_____
                                                Karis A. Chi
                                         Attorneys for Defendants and
                                         Counterclaimants Human Biostar, Inc.,
                                         RNL Bio Co., Ltd., Jin Han Hong and
                                         Jeong Chan Ra

2901260.1

21

ANSWER AND COUNTERCLAIMS

# EXHIBIT A

WAIVER AND RELEASE OF LIABILITY AND
ASSUMPTION OF RISK ACKNOWLEDGEMENT
FOR
AUTOLOGOUS ADIPOSE TISSUE DERIVED STEM CELL THERAPY

DEFINITIONS:

"RNL Stem Cell Therapy": Providing for the IV or Intra-articular, IM injection and removal of stem cells from the body, providing for medical care related to stem cell removal.

"Services": Providing for all travel and transportation-related activity associated with medical tourism trip.

"RNL Bio": Including but not limited to all of its subsidiaries, successors, and assigns, officers, employees, and board members.

STEM CELL THERAPY:

Adult autologous adiposetissue (fat tissue) stem cell therapy is a very new mode of therapy. It is quite different from embryonal stem cell therapy that involves obtaining stem cells from a fertilized egg.

This fat tissue stem cell is multipotent, meaning that it can change into muscle cells, bone cells, cartilage cells, liver cells, neuronal cells, to name a few. Since it is your own cells, it is considered safe when RNL bio scientists isolate from 5-15 grams of fat tissue, with no reaction to the injection.

It shown to be safe when it is infused into body through an intravenous route, and to be quite effective in many form of illness. So far RNL bio's cells were found to be safe, free from mad cow disease, and approved for human use in several diseases including osteoarthritis and blood vessel anomalies, like Bueger's disease.

However, even though more than Six Hundred and Forty (640) persons have received these cell without any reaction, there is no guaranty that it will cure certain diseases. it is still uncharted area in many ways.

Side reactions include pain at the venous puncture area. Transient aching or pain in the area of you illness will also usually occur: e.g., joint pain for the people with the arthritis, or headaches for those with sinus infections or chronic sinusitis since this cell goes to the area of the lesion.

It is unadvisable if one has a cancer to receive this form of therapy.

RNL Life Science, Inc 3250 W Olympic Bl #225 T (323) 731-2321 Los Angeles CA 90006                    1

RELEASE OF LIABILITY:

I, (name of party) _BRAD D. LEE_, hereby declare that:

1. I am 18 years of age or older.

2. I am submitting this release, waiver of liability, and assumption of risk declaration voluntarily and of my own free will.

3. I have no physical or emotional problems, nor any history thereof, which will impair my ability to utilize the Services of RNL Bio and participate in such medical tourism trip in a safe manner.

4. I understand and agree that it is my responsibility to assess the hazards presented by my use of the RNL Stem Cell Therapy and Services associated with it, and further agree that I am the ultimate judge as to whether I can use the Services without risk of harm to myself.

5. I understand and am aware of the potential benefit I may receive with this autologous fat tissue stem cell and also of the risk of reaction associated with the IV infusion.

6. I understand and EXPRESSLY ASSUME all the dangers incident to using the Services and hereby RELEASE and DISCHARGE, on behalf of myself, my heirs, executors, personal representatives, and assigns, RNL BIO, its officers, employees, agents, successors and assigns, from any and all actions, causes of action, claims, demands, liability for damage to or loss of personal property, sickness or injury from whatever source, legal entanglements, imprisonment, death, whether caused by negligence, breach of contract or otherwise, of any nature whatsoever, arising out of or in any way connected with its involvement with any Services. Specifically, I release RNL BIO, its officers, employees, agents, successors, and assigns, from any liability or responsibility for my physical condition.

7. I understand that participation in this program is strictly voluntary and I freely chose to participate

8. I hereby to agree to receive my stem cells as part of my medical tour and I understand and agree to assume the financial cost of such treatment.

Name  (please print)  BRAD P. LEE                    Date 5/27/09
_____              _____

Patient or responsible party's signature

_____

Witness.  Jin Han Hong                               Date 5/27/09
_____              _____

Traveler is a minor                        yes( )   no(✓)

Traveler is physically or mentally unable to sign   yes( )   no(✓)

I have given the above individual an explanation of the contemplated
medical therapy with the stem cell and anticipated benefits, risks, and
potential complications.

Physician's signature, or Office manger's signature        Date

_____              _____

# EXHIBIT B

WAIVER AND RELEASE OF LIABILITY AND
ASSUMPTION OF RISK ACKNOWLEDGEMENT
FOR
AUTOLOGOUS ADIPOSE TISSUE DERIVED STEM CELL THERAPY


DEFINITIONS:

"RNL Stem Cell Therapy": Providing for the IV or Intra-articular, IM injection and removal of stem cells from the body, providing for medical care related to stem cell removal.

"Services": Providing for all travel and transportation-related activity associated with medical tourism trip.

"RNL Bio": Including but not limited to all of its subsidiaries, successors, and assigns, officers, employees, and board members.

STEM CELL THERAPY:

Adult autologous adiposetissue (fat tissue) stem cell therapy is a very new mode of therapy. It is quite different from embryonal stem cell therapy that involves obtaining stem cells from a fertilized egg.

This fat tissue stem cell is multipotent, meaning that it can change into muscle cells, bone cells, cartilage cells, liver cells, neuronal cells, to name a few. Since it is your own cells, it is considered safe when RNL bio scientists isolate from 5-15 grams of fat tissue, with no reaction to the injection.

It shown to be safe when it is infused into body through an intravenous route, and to be quite effective in many form of illness. So far RNL bio's cells were found to be safe, free from mad cow disease, and approved for human use in several diseases including osteoarthritis and blood vessel anomalies, like Bueger's disease.

However, even though more than Six Hundred and Forty (640) persons have received these cell without any reaction, there is no guaranty that it will cure certain diseases. it is still uncharted area in many ways.

Side reactions include pain at the venous puncture area. Transient aching or pain in the area of you illness will also usually occur: e.g., joint pain for the people with the arthritis, or headaches for those with sinus infections or chronic sinusitis since this cell goes to the area of the lesion.

It is unadvisable if one has a cancer to receive this form of therapy.

RELEASE OF LIABILITY:

I, (name of party) _HELEN  J.  LEE_ hereby declare that:

1. I am 18 years of age or older.
2. I am submitting this release, waiver of liability, and assumption of risk declaration voluntarily and of my own free will.
3. I have no physical or emotional problems, nor any history thereof, which will impair my ability to utilize the Services of RNL Bio and participate in such medical tourism trip in a safe manner.
4. I understand and agree that it is my responsibility to assess the hazards presented by my use of the RNL Stem Cell Therapy and Services associated with it, and further agree that I am the ultimate judge as to
whether I can use the Services without risk of harm to myself.
5. I understand and am aware of the potential benefit I may receive with this autologous fat tissue stem cell and also of the risk of reaction associated with the IV infusion.
6. I understand and EXPRESSLY ASSUME all the dangers incident to using the Services and hereby RELEASE and DISCHARGE, on behalf of myself, my heirs, executors, personal representatives, and assigns, RNL BIO, its officers, employees, agents, successors and assigns, from any and all actions, causes of action, claims, demands, liability for damage to or loss of personal property, sickness or injury from whatever source, legal entanglements, imprisonment, death, whether caused by negligence, breach of contract or otherwise, of any nature whatsoever, arising out of or in any way connected with its involvement with any Services. Specifically, I release RNL BIO, its officers, employees, agents, successors, and assigns, from any liability or responsibility for my physical condition.
7. I understand that participation in this program is strictly voluntary and I freely chose to participate
8. I hereby to agree to receive my stem cells as part of my medical tour and I understand and agree to assume the financial cost of such treatment.

Name  (please print)                                    Date

HELEN   J.   LEE                                        5-27-09

Patient or responsible party's signature

_Helen John_

Witness.                                                Date

Jin Hom Hong                                            5/27/09

_Jilun Hong_

Traveler is a minor                        yes( )   no(/)

Traveler is physically or mentally unable to sign    yes( )   no(/)

I have given the above individual an explanation of the contemplated
medical therapy with the stem cell and anticipated benefits, risks, and
potential complications.

Physician's signature, or Office manger's signature       Date

# EXHIBIT C

WAIVER AND RELEASE OF LIABILITY AND
ASSUMPTION OF RISK ACKNOWLEDGEMENT
FOR
AUTOLOGOUS ADIPOSE TISSUE DERIVED STEM CELL THERAPY

DEFINITIONS:

"RNL Stem Cell Therapy": Providing for the IV or Intra-articular, IM injection and removal of stem cells from the body, providing for medical care related to stem cell removal.

"Services": Providing for all travel and transportation-related activity associated with medical tourism trip.

"RNL Bio": Including but not limited to all of its subsidiaries, successors, and assigns, officers, employees, and board members.

STEM CELL THERAPY:

Adult autologous adiposetissue (fat tissue) stem cell therapy is a very new mode of therapy. It is quite different from embryonal stem cell therapy that involves obtaining stem cells from a fertilized egg.

This fat tissue stem cell is multipotent, meaning that it can change into muscle cells, bone cells, cartilage cells, liver cells, neuronal cells, to name a few. Since it is your own cells, it is considered safe when RNL bio scientists isolate from 5-15 grams of fat tissue, with no reaction to the injection.

It shown to be safe when it is infused into body through an intravenous route, and to be quite effective in many form of illness. So far RNL bio's cells were found to be safe, free from mad cow disease, and approved for human use in several diseases including osteoarthritis and blood vessel anomalies, like Bueger's disease.

However, even though more than Six Hundred and Forty (640) persons have received these cell without any reaction, there is no guaranty that it will cure certain diseases. it is still uncharted area in many ways.

Side reactions include pain at the venous puncture area. Transient aching or pain in the area of you illness will also usually occur: e.g., joint pain for the people with the arthritis, or headaches for those with sinus infections or chronic sinusitis since this cell goes to the area of the lesion.

It is unadvisable if one has a cancer to receive this form of therapy.

RELEASE OF LIABILITY:

I, (name of party)_____, hereby declare that:

1. I am 18 years of age or older.
2. I am submitting this release, waiver of liability, and assumption of risk declaration voluntarily and of my own free will.
3. I have no physical or emotional problems, nor any history thereof, which will impair my ability to utilize the Services of RNL Bio and participate in such medical tourism trip in a safe manner.
4. I understand and agree that it is my responsibility to assess the hazards presented by my use of the RNL Stem Cell Therapy and Services associated with it, and further agree that I am the ultimate judge as to
whether I can use the Services without risk of harm to myself.
5. I understand and am aware of the potential benefit I may receive with this autologous fat tissue stem cell and also of the risk of reaction associated with the IV infusion.
6. I understand and EXPRESSLY ASSUME all the dangers incident to using the Services and hereby RELEASE and DISCHARGE, on behalf of myself, my heirs, executors, personal representatives, and assigns, RNL BIO, its officers, employees, agents, successors and assigns, from any and all actions, causes of action, claims, demands, liability for damage to or loss of personal property, sickness or injury from whatever source, legal entanglements, imprisonment, death, whether caused by negligence, breach of contract or otherwise, of any nature whatsoever, arising out of or in any way connected with its involvement with any Services. Specifically, I release RNL BIO, its officers, employees, agents, successors, and assigns, from any liability or responsibility for my physical condition.
7. I understand that participation in this program is strictly voluntary and I freely chose to participate
8. I hereby to agree to receive my stem cells as part of my medical tour and I understand and agree to assume the financial cost of such treatment.

Name  (please print)                                      Date

_____          _____

Patient or responsible party's signature

_William Lee_____

Witness.                                                  Date

_____                          _____

Traveler is a minor                          yes( )   no( )

Traveler is physically or mentally unable to sign   yes( )   no( )

I have given the above individual an explanation of the contemplated
medical therapy with the stem cell and anticipated benefits, risks, and
potential complications.

Physician's signature, or Office manger's signature        Date

_____          _____

# EXHIBIT D

WAIVER AND RELEASE OF LIABILITY AND
ASSUMPTION OF RISK ACKNOWLEDGEMENT
FOR
AUTOLOGOUS ADIPOSE TISSUE DERIVED STEM CELL THERAPY

DEFINITIONS:

"RNL Stem Cell Therapy": Providing for the IV or Intra-articular, IM injection and removal of stem cells from the body, providing for medical care related to stem cell removal.

"Services": Providing for all travel and transportation-related activity associated with medical tourism trip.

"RNL Bio": Including but not limited to all of its subsidiaries, successors, and assigns, officers, employees, and board members.

STEM CELL THERAPY:

Adult autologous adiposetissue (fat tissue) stem cell therapy is a very new mode of therapy. It is quite different from embryonal stem cell therapy that involves obtaining stem cells from a fertilized egg.

This fat tissue stem cell is multipotent, meaning that it can change into muscle cells, bone cells, cartilage cells, liver cells, neuronal cells, to name a few. Since it is your own cells, it is considered safe when RNL bio scientists isolate from 5-15 grams of fat tissue, with no reaction to the injection.

It shown to be safe when it is infused into body through an intravenous route, and to be quite effective in many form of illness. So far RNL bio's cells were found to be safe, free from mad cow disease, and approved for human use in several diseases including osteoarthritis and blood vessel anomalies, like Bueger's disease.

However, even though more than Six Hundred and Forty (640) persons have received these cell without any reaction, there is no guaranty that it will cure certain diseases. it is still uncharted area in many ways.

Side reactions include pain at the venous puncture area. Transient aching or pain in the area of you illness will also usually occur: e.g., joint pain for the people with the arthritis, or headaches for those with sinus infections or chronic sinusitis since this cell goes to the area of the lesion.

It is unadvisable if one has a cancer to receive this form of therapy.

RELEASE OF LIABILITY:

I, (name of party) _Jung Hui Lee_ , hereby declare that:

1. I am 18 years of age or older.
2. I am submitting this release, waiver of liability, and assumption of risk declaration voluntarily and of my own free will.
3. I have no physical or emotional problems, nor any history thereof, which will impair my ability to utilize the Services of RNL Bio and participate in such medical tourism trip in a safe manner.
4. I understand and agree that it is my responsibility to assess the hazards presented by my use of the RNL Stem Cell Therapy and Services associated with it, and further agree that I am the ultimate judge as to
whether I can use the Services without risk of harm to myself.
5. I understand and am aware of the potential benefit I may receive with this autologous fat tissue stem cell and also of the risk of reaction associated with the IV infusion.
6. I understand and EXPRESSLY ASSUME all the dangers incident to using the Services and hereby RELEASE and DISCHARGE, on behalf of myself, my heirs, executors, personal representatives, and assigns, RNL BIO, its officers, employees, agents, successors and assigns, from any and all actions, causes of action, claims, demands, liability for damage to or loss of personal property, sickness or injury from whatever source, legal entanglements, imprisonment, death, whether caused by negligence, breach of contract or otherwise, of any nature whatsoever, arising out of or in any way connected with its involvement with any Services. Specifically, I release RNL BIO, its officers, employees, agents, successors, and assigns, from any liability or responsibility for my physical condition.
7. I understand that participation in this program is strictly voluntary and I freely chose to participate
8. I hereby to agree to receive my stem cells as part of my medical tour and I understand and agree to assume the financial cost of such treatment.

Name  (please print)                                      Date

Jung Hui Lee                                              10/5/08

Patient or responsible party's signature


Witness.                                                 Date


Traveler is a minor                           yes( )   no( )

Traveler is physically or mentally unable to sign    yes( )   no( )


I have given the above individual an explanation of the contemplated
medical therapy with the stem cell and anticipated benefits, risks, and
potential complications.


Physician's signature, or Office manger's signature      Date

# EXHIBIT E

WAIVER AND RELEASE OF LIABILITY AND
ASSUMPTION OF RISK ACKNOWLEDGEMENT
FOR
AUTOLOGOUS ADIPOSE TISSUE DERIVED STEM CELL THERAPY

DEFINITIONS:

"RNL Stem Cell Therapy": Providing for the IV or Intra-articular, IM injection and removal of stem cells from the body, providing for medical care related to stem cell removal.

"Services": Providing for all travel and transportation-related activity associated with medical tourism trip.

"RNL Bio": Including but not limited to all of its subsidiaries, successors, and assigns, officers, employees, and board members.

STEM CELL THERAPY:

Adult autologous adiposetissue (fat tissue) stem cell therapy is a very new mode of therapy. It is quite different from embryonal stem cell therapy that involves obtaining stem cells from a fertilized egg.

This fat tissue stem cell is multipotent, meaning that it can change into muscle cells, bone cells, cartilage cells, liver cells, neuronal cells, to name a few. Since it is your own cells, it is considered safe when RNL bio scientists isolate from 5-15 grams of fat tissue, with no reaction to the injection.

It shown to be safe when it is infused into body through an intravenous route, and to be quite effective in many form of illness. So far RNL bio's cells were found to be safe, free from mad cow disease, and approved for human use in several diseases including osteoarthritis and blood vessel anomalies, like Bueger's disease.

However, even though more than Six Hundred and Forty (640) persons have received these cell without any reaction, there is no guaranty that it will cure certain diseases. it is still uncharted area in many ways.

Side reactions include pain at the venous puncture area. Transient aching or pain in the area of you illness will also usually occur: e.g., joint pain for the people with the arthritis, or headaches for those with sinus infections or chronic sinusitis since this cell goes to the area of the lesion.

It is unadvisable if one has a cancer to receive this form of therapy.

## RELEASE OF LIABILITY:

I, (name of party) *Eun Zoo Lee* , hereby declare that:


1. I am 18 years of age or older.
2. I am submitting this release, waiver of liability, and assumption of risk declaration voluntarily and of my own free will.
3. I have no physical or emotional problems, nor any history thereof, which will impair my ability to utilize the Services of RNL Bio and participate in such medical tourism trip in a safe manner.
4. I understand and agree that it is my responsibility to assess the hazards presented by my use of the RNL Stem Cell Therapy and Services associated with it, and further agree that I am the ultimate judge as to whether I can use the Services without risk of harm to myself.
5. I understand and am aware of the potential benefit I may receive with this autologous fat tissue stem cell and also of the risk of reaction associated with the IV infusion.
6. I understand and EXPRESSLY ASSUME all the dangers incident to using the Services and hereby RELEASE and DISCHARGE, on behalf of myself, my heirs, executors, personal representatives, and assigns, RNL BIO, its officers, employees, agents, successors and assigns, from any and all actions, causes of action, claims, demands, liability for damage to or loss of personal property, sickness or injury from whatever source, legal entanglements, imprisonment, death, whether caused by negligence, breach of contract or otherwise, of any nature whatsoever, arising out of or in any way connected with its involvement with any Services. Specifically, I release RNL BIO, its officers, employees, agents, successors, and assigns, from any liability or responsibility for my physical condition.
7. I understand that participation in this program is strictly voluntary and I freely chose to participate
8. I hereby to agree to receive my stem cells as part of my medical tour and I understand and agree to assume the financial cost of such treatment.

Name  (please print)

_Eun Zoo Lee_

Date

_10/27/0 8_

Patient or responsible party's signature

_____

Witness.                                                          Date

_____                            _____

Traveler is a minor                                      yes( )    no( )

Traveler is physically or mentally unable to sign     yes( )    no( )

I have given the above individual an explanation of the contemplated medical therapy with the stem cell and anticipated benefits, risks, and potential complications.

Physician's signature, or Office manger's signature          Date

_____          _____

RNL Life Science, Inc 3250 W Olympic Bl #225 T (323) 731-2321 Los Angeles CA 90006          3

# EXHIBIT F

# WAIVER AND RELEASE OF LIABILITY AND
## ASSUMPTION OF RISK ACKNOWLEDGEMENT
### FOR
## AUTOLOGOUS ADIPOSE TISSUE DERIVED STEM CELL THERAPY

DEFINITIONS:

"RNL Stem Cell Therapy": Providing for the IV or Intra-articular, IM injection and removal of stem cells from the body, providing for medical care related to stem cell removal.

"Services": Providing for all travel and transportation-related activity associated with medical tourism trip.

"RNL Bio": Including but not limited to all of its subsidiaries, successors, and assigns, officers, employees, and board members.

STEM CELL THERAPY:

Adult autologous adiposetissue (fat tissue) stem cell therapy is a very new mode of therapy. It is quite different from embryonal stem cell therapy that involves obtaining stem cells from a fertilized egg.

This fat tissue stem cell is multipotent, meaning that it can change into muscle cells, bone cells, cartilage cells, liver cells, neuronal cells, to name a few. Since it is your own cells, it is considered safe when RNL bio scientists isolate from 5-15 grams of fat tissue, with no reaction to the injection.

It shown to be safe when it is infused into body through an intravenous route, and to be quite effective in many form of illness. So far RNL bio's cells were found to be safe, free from mad cow disease, and approved for human use in several diseases including osteoarthritis and blood vessel anomalies, like Bueger's disease.

However, even though more than Six Hundred and Forty (640) persons have received these cell without any reaction, there is no guaranty that it will cure certain diseases. it is still uncharted area in many ways.

Side reactions include pain at the venous puncture area. Transient aching or pain in the area of you illness will also usually occur: e.g., joint pain for the people with the arthritis, or headaches for those with sinus infections or chronic sinusitis since this cell goes to the area of the lesion.

It is unadvisable if one has a cancer to receive this form of therapy.

RELEASE OF LIABILITY:

I, (name of party) _Ben Hang Lee_ hereby declare that:

1. I am 18 years of age or older.
2. I am submitting this release, waiver of liability, and assumption of risk declaration voluntarily and of my own free will.
3. I have no physical or emotional problems, nor any history thereof, which will impair my ability to utilize the Services of RNL Bio and participate in such medical tourism trip in a safe manner.
4. I understand and agree that it is my responsibility to assess the hazards presented by my use of the RNL Stem Cell Therapy and Services associated with it, and further agree that I am the ultimate judge as to whether I can use the Services without risk of harm to myself.
5. I understand and am aware of the potential benefit I may receive with this autologous fat tissue stem cell and also of the risk of reaction associated with the IV infusion.
6. I understand and EXPRESSLY ASSUME all the dangers incident to using the Services and hereby RELEASE and DISCHARGE, on behalf of myself, my heirs, executors, personal representatives, and assigns, RNL BIO, its officers, employees, agents, successors and assigns, from any and all actions, causes of action, claims, demands, liability for damage to or loss of personal property, sickness or injury from whatever source, legal entanglements, imprisonment, death, whether caused by negligence, breach of contract or otherwise, of any nature whatsoever, arising out of or in any way connected with its involvement with any Services. Specifically, I release RNL BIO, its officers, employees, agents, successors, and assigns, from any liability or responsibility for my physical condition.
7. I understand that participation in this program is strictly voluntary and I freely chose to participate
8. I hereby to agree to receive my stem cells as part of my medical tour and I understand and agree to assume the financial cost of such treatment.

Name  (please print) _____ Ben Hong Lee _____

Date _____ 10/27/0? _____

Patient or responsible party's signature

_____ Ben Hong Lee _____

Witness. _____

Date _____

_____

Traveler is a minor                                         yes( )   no( )

Traveler is physically or mentally unable to sign      yes( )   no( )

I have given the above individual an explanation of the contemplated medical therapy with the stem cell and anticipated benefits, risks, and potential complications.

Physician's signature, or Office manger's signature          Date

_____                                              _____